Lease for State-Aided Public Housing

760 C.M.R. 6.06

SALEM HOUSING AUTHORITY

## Section I. DESCRIPTION OF THE PARTIES AND THE LEASED PREMISES

The Salem Housing Authority (referred to herein as LHA) leases to **Jorge Maisonet** (Tenant) **205 Bridge Street, #201** (the leased premises) with **1** bedrooms beginning **August 29, 2013** until termination as provided herein.

The following persons, together with Tenant, are the members of Tenant's household (household members) authorized to occupy the leased premises with Tenant:
    **N/A**

No other person may occupy the leased premises overnight for more than a total of twenty-one (21) nights in any twelve (12) month period without LHA's written consent, as provided in Section V of this lease. The words "overnight" and "nights," as used in this lease, include daylight hours if the person regularly sleeps during the day rather than at night.

## Section II. RENT
### (A) Amount and Payment of Rent

Tenant shall pay the monthly rent of $247.00 in advance on or before the first (1st) day of each month beginning **August 29, 2013**. Rent for any fraction of a month of occupancy at the beginning or end of the term will be charged on a pro rata basis. The monthly rent will remain in effect until a new monthly rent is determined and put into effect by LHA in accordance with Section IV of this lease.

During the term of this lease LHA shall accept as rent all payments which Tenant designates as rent. The acceptance of such rental payments by LHA shall not constitute a waiver of payment for any other amounts due or of any other past, present, or future obligation under this lease. Following termination of this lease, if Tenant fails to vacate forthwith, Tenant shall pay monthly in advance the fair value of use and occupancy but no less than an amount equivalent to the rent in effect at the time of termination. Payments for such use and occupancy shall be made in advance and shall continue until Tenant and household members vacate or are otherwise dispossessed.

### (B) Nonpayment of Rent - Delinquency and Lease Termination Notice

In the event that Tenant shall fail to pay all or any part of the rent within seven (7) days of its due date, the LHA may declare the unpaid rent delinquent and issue a Notice of Termination of Lease which may include a Notice to Quit. Prior to issuing such a notice, except where Tenant has been habitually delinquent in paying rent and has had a prior opportunity for discussion within the prior six (6) months, the LHA shall provide the Tenant with an opportunity to discuss the reason for the late payment.

### (C) Nonpayment of Rent - Interest; Repayment Agreement; Possible Eviction and Costs

In the event that Tenant fails to pay all or any part of the rent within thirty (30) days of its due date, LHA may impose a fee in the amount of $25 for failure to pay rent when due. Rent payments shall be applied to rental obligations with the oldest obligation being paid first. If Tenant shall have shown good cause for late payment to LHA and if LHA and Tenant enter a repayment agreement, LHA in its discretion may waive the fee for late payment. By charging increased rent, LHA shall not have condoned Tenant's breach of Tenant's obligation to pay rent when due, and LHA shall not thereby waive any rights to issue a notice of termination of the Lease, to bring eviction proceedings against Tenant and Tenant's household, and to collect arrearages, constable fees, reasonable attorney fees and costs, on account of the Tenant's failure to pay rent when due.

### (D) Overhoused Households

In the event that the size of Tenant's household does not warrant the number of bedrooms in the leased premises, and, as a consequence, the Tenant household is determined to be overhoused, unless an exception is provided by law, upon availability of a smaller unit of appropriate unit size, LHA shall offer to lease such smaller unit to Tenant who shall have



monthly rent shall be 150% of the rent which would otherwise have been charged to Tenant. By charging such increased rent, LHA shall not have condoned Tenant's breach of Tenant's obligation to pay rent when due, and LHA shall not thereby waive any rights to issue a notice of termination of the Lease, to bring eviction proceedings against Tenant and to collect arrearages, constable fees, reasonable attorney fees and costs on account of the Tenant's failure to pay rent when due.

## Section III. ELECTRICITY, HEATING FUEL AND GAS

Tenant shall pay the cost of the following if checked by LHA and initialed by Tenant:
    [ ] Electricity [initials:   ]    [ ] Heating Fuel [initials:   ]    [ ] Gas [initials:   ]
LHA shall pay the cost of the items not so checked and initialed.

## Section IV. ANNUAL AND INTERIM REDETERMINATIONS OF RENT

### (A) Annual Redetermination; Tenant's Obligation to Submit Verified Information

LHA shall redetermine Tenant's monthly rent, once annually in accordance with applicable regulations or authorization of the Department of Housing and Community Development (the "Department").

Each notice of a redetermined rent shall be in writing and contain the following information:
1. The rental amount and the date when it will be effective;
2. The calculation of Tenant's monthly gross household income and monthly net household income used by LHA in determining Tenant's rent;
3. Tenant's right to, and the method of obtaining a hearing under the grievance procedure in the event of a factual error.

For purposes of redetermination of rent (and for determining continued eligibility and appropriateness of unit size), Tenant shall submit, within thirty (30) days after a request from LHA, signed, complete, and accurate statements and/or other information setting forth pertinent facts as to eligibility, income, exclusions, deductions, employment, and household composition of Tenant and Tenant's household. Tenant shall also provide authorization for LHA to obtain verification of such information from reliable sources with knowledge of the facts in order to insure its accuracy.

### (B) Interim Redetermination on Account of Increased Income

An increase of ten percent (10%) or more in Tenant's monthly gross household income (the gross amount of income received by Tenant and household members during a month computed as provided in the Department's regulations) shall require a rent redetermination by LHA, and Tenant shall report any such increase (including any changes in income, exclusions and deductions) to LHA by the seventh (7th) day of the month following the increase together with authorization for verification.

Rent increases on account of such an increase will be effective no less than fourteen (14) days after LHA sends Tenant a notice of redetermined or adjusted rent; such notice may be sent before LHA verifies the increase. If Tenant fails to report an increase of ten percent (10%) or more in monthly gross household income (or to provide sufficient information upon which to calculate the rent) by the seventh (7th) day of the following month, any increase in redetermined or adjusted rent shall be effective retroactively so as to begin on the first day of the second month following the month in which the increase occurred.

### (C) Receipt of Delayed Payments of Income

If Tenant or another household member receives delayed payments of income (such as receipt of retroactive wage increases or receipt of worker's compensation, SSI, or SSDI benefits for the time period while the claim for benefits was being determined), if such income has not been previously reported, Tenant shall report receipt of the income to LHA within seven (7) days after receipt. An additional rental amount shall be computed by the percentage set out in the Department's regulations and charged on account of so much of the income which, if not delayed, would have been paid at a prior time during Tenant's tenancy at LHA. Tenant shall pay the additional rental amount due on account of such income (without interest) upon receipt of a bill from LHA.

### (D) Consequences of Nondisclosure or Misrepresentation of Income

If Tenant misrepresents, fails to disclose, or fails to disclose in a timely manner pertinent information affecting the Tenant's net household income, Tenant shall pay to LHA any rent which should have been paid but for Tenant's misrepresentation or nondisclosure, and any applicable interest for the period of nonpayment. Such misrepresentation or nondisclosure shall also constitute cause for termination of this lease and eviction if the consequent underpayment of rent was 10% or more of the monthly rent which should have been paid.

(E) Interim Redetermination on Account of Decreased Income

If Tenant's monthly gross household income decreases, rent shall be redetermined if the Tenant requests a redetermination and authorizes verification of the decrease. Any rent decrease shall be effective on the first rent payment day after LHA receives reliable verification of the decrease or at such earlier time as the LHA shall find to be warranted in the event that verification is delayed.

## Section V. OCCUPANCY AND USE OF LEASED PREMISES
(A) Tenant and Household Members

Tenant shall not assign this lease and shall not sublet or transfer possession of the leased premises. Tenant shall not take in boarders or lodgers and shall not use or permit use of the leased premises for any purpose other than as a private dwelling solely for Tenant and the other members of Tenant's household who are listed in Section I of this lease or who are listed on a subsequent written lease addendum. Tenant and each other household member must physically occupy the leased premises as his or her principal place of residence for at least nine (9) months during any twelve (12) month period unless good cause is shown for a longer absence, such as involuntary absence attributable to illness or absence of a household member who is a full-time student. If Tenant or a household member without such cause shall fail to occupy the leased premises for the minimum of nine (9) months during any twelve (12) month period, Tenant shall delete such person from the lease within thirty (30) days of the failure.

(B) Guests

Tenant and other household members may have guests provided that Tenant shall be responsible for the conduct of any guest while in the leased premises or on LHA property and shall take reasonable steps to supervise the conduct of any guest, including a guest of a household member. No guest may stay overnight (as defined in Section I) for more than a total of twenty-one (21) nights in any twelve (12) month period without LHA's written approval of a temporary extension of the guest's stay. Tenant shall not accept any compensation from an overnight guest for his or her stay in the leased premises. If notwithstanding adequate supervision, a guest behaves in a manner which violates any of Tenant's Obligations set out in Section IX, among its remedies LHA may require that Tenant take steps to insure that the individual involved shall not be a guest of Tenant or of any household member again in the future. In addition, if a guest damages or destroys LHA property, among its remedies LHA may require that the Tenant shall pay the cost of repair or replacement.

Tenant shall notify LHA of the length of the stay of an overnight guest within a reasonable time following an overnight stay; such notice shall be confidential and, provided that the guest has not been barred from the premises and has not committed lease violations during his or her stay, the notice shall only be used by LHA for enforcement of the foregoing provision as to the permissible stay of a guest in the leased premises.

Each household member shall take reasonable steps to supervise the conduct of his or her guests. Failure of a household member to take such steps shall constitute good cause for LHA to request deletion of the household member from the lease in the manner provided in Section XI if his or her guest violates the provisions of the lease and the violation constitutes cause for termination of the lease but LHA in its discretion does not seek such termination.

If an individual, whom Tenant or a household member knows or should have known to have a history of serious crimes or of antisocial conduct, is a guest of Tenant or the household member, this circumstance shall be deemed a lack of adequate supervision if the guest violates the provisions of the lease.

For purposes of this lease an employee of Tenant or of a household member, other than a personal care attendant, shall be deemed to be a guest.

(C) Personal Care Attendant

In the event Tenant or a household member has a disability and as a consequence of that disability requires the services of a full-time, live-in personal care attendant, any such personal care attendant, who is not paid for the fair value of his or her services to the disabled person, must be approved as an additional household member pursuant to Section XII of this lease prior to his or her residing in the leased premises. Any such full-time, live-in personal care attendant, who is to be paid for the fair value of his or her services to the disabled person, shall be screened in the same manner as an applicant for public housing and, if he or she is found to be qualified, he or she may reside in the premises without being added as a household member but at LHA's request shall verify that he or she is working full-time as a personal care attendant for the disabled person and is receiving wages for the fair value of these services.

(D) Remaining Members of a Household

In the event that Tenant ceases to occupy the leased premises, one or more remaining members of Tenant's household may be given permission for continued occupancy, provided that: (1) Tenant is not relocating to public or assisted housing

3

elsewhere and is current in his or her financial obligations to LHA and is not subject to eviction proceedings; (2) the remaining members of the household are eligible and qualified for public housing and (excepting a newborn of a household member) have resided in the leased premises for at least one year, and; (3) at least one adult member (or emancipated minor member) of the household applies for and signs a new lease with LHA. In the event of divorce or separation between household members, one of whom is the Tenant, or entry of a protective order for one household member against another, a Massachusetts court with jurisdiction may determine who shall be eligible for continued occupancy, and if those persons do not include the Tenant named in this lease, the Tenant shall vacate. In the event that any such remaining members of Tenant's household are approved for continued occupancy, if the size of the leased premises is no longer appropriate for the household, such remaining members shall transfer to a smaller unit if and when offered by LHA.

(E) Other Legal Use of the Leased Premises

With the LHA's prior written approval, Tenant and household members may engage in legal profit-making activities which are incidental to the primary use of the unit as a private dwelling if suitable general liability insurance coverage is provided insofar as LHA shall deem it necessary, and if the activities will: (i) not be likely to cause any disturbance or inconvenience to neighbors; (ii) comply with any applicable zoning and any applicable federal, state or local licensing requirements; (iii) not significantly increase utility or water consumption (unless Tenant separately pays for utilities); and (iv) not result in any other additional expense to LHA. At any time LHA may withdraw permission if any of these conditions are violated.

(F) Appropriate Unit Size: Maximum Persons

The leased premises are to be considered of appropriate unit size so long as Tenant, other household members, and any full-time, live-in personal care attendant, who are the opposite sex, age eight (8) or over, excepting husband and wife (or those living as husband and wife), do not have to share a bedroom, and so long as no more than two (2) persons share any bedroom. Husband and wife (or those in a similar living arrangement) must share a bedroom as must same sex household members. Persons of the opposite sex, age eight (8) or over, may share a bedroom at the Tenant's irrevocable election, and if such an election is made the leased premises will be deemed to be of appropriate unit size even if a bedroom is so shared.

Exceptions may be made under applicable regulations or authorizations of the Department. In no event shall Tenant permit more occupants than the number of occupants permissible under the provisions of the State Sanitary Code to occupy the leased premises. In no event shall Tenant request authorization of a household with members in excess of such number of permissible occupants.

Section VI. TRANSFERS

(A) Decreases in Household Size

In the event that the size of Tenant's household decreases by one or more members and as a consequence the leased premises are no longer of appropriate unit size, unless an exception is provided by law, upon availability of a smaller unit of appropriate unit size, LHA shall offer to lease such unit to Tenant who shall have thirty (30) days within which to sign a new lease and to move to the unit of appropriate unit size. Following expiration of thirty (30) days, Tenant shall vacate the leased premises.

(B) Increases in Household Size

In the event that one or more household members are added to this lease as provided in Section XII and as a consequence the appropriate unit size for the household increases, LHA shall approve an application to transfer the household to a larger unit of appropriate unit size upon availability provided that: (1) there are and have been no serious violations of the lease within the preceding two (2) years; (2) Tenant is current in rent, charges and fees owed to LHA; and (3) Tenant is not subject to eviction proceedings or to the terms of an agreement for judgment in a prior eviction proceeding.

(C) Transfers for Modernization Work

In the event modernization work is to be undertaken involving the leased premises, LHA shall give written notice about the work and offer to transfer Tenant's household to another unit of appropriate unit size upon availability. Upon notice of availability of such a unit, Tenant shall have thirty (30) days within which sign a lease for and to move to the other unit. Following expiration of thirty (30) days from the notice of availability, Tenant shall vacate the leased premises.

(D) Other Reasons for Transfer

LHA may approve an application for transfer pursuant to applicable state regulations or authorization of the Department.

Section VII. HAZARDOUS CONDITIONS
  (A) Report and Repair of Hazardous Conditions
    If, as a consequence of damage to the leased premises or the building of which it is part, conditions are created which are imminently hazardous to the life, health, or safety of the Tenant's household, Tenant shall immediately report the conditions to LHA. LHA shall make its best efforts to repair the damage within a reasonable time and shall prioritize such repairs in its repair schedule. If the damage was caused by Tenant, other household member or guest the cost of repairs shall be charged to and paid by Tenant.
  (B) Temporary Alternative Accommodations During Prolonged Repairs
    If such imminently hazardous conditions exist, LHA shall offer alternative temporary accommodations in an appropriately sized vacant unit, if available, in the event that repairs necessary to correct the hazardous conditions cannot be made within a reasonable time, provided that the damage was not caused by Tenant, other household member or guest. Tenant shall have the same obligations, including the same rental obligation, for these temporary accommodations as for the leased premises but shall move back to the leased premises forthwith upon notice that necessary repairs have been made.
  (C) Abatement of Rent During Prolonged Repairs
    If such imminently hazardous conditions exist, LHA shall abate Tenant's rent for the leased premises by a percentage commensurate with the percentage loss in its value as a dwelling provided that: (1) repairs necessary to correct the hazardous conditions cannot be made within a reasonable time; (2) Tenant has not been notified that alternative temporary accommodations are available; and, (3) the damage was not caused by Tenant, other household member or guest.

Section VIII. LHA OBLIGATIONS
  LHA has the following obligations:
  (A) Initial Condition of Leased Premises
    To deliver the leased premises in decent, safe and sanitary condition at initial occupancy in conformity with the requirements of Chapter II of the State Sanitary Code.
  (B) Heat
    To provide and maintain in good condition a heating system and to supply legally requisite heat during the period from September 15 through June 15 of each year, unless the Tenant is required to supply heating fuel and fails to provide adequate fuel or is otherwise responsible for the lack or inadequacy of heat.
  (C) Hot Water
    To provide and maintain in good condition a hot water heater and to supply legally requisite hot water in sufficient quantity and pressure for ordinary use unless the Tenant is required to supply the fuel and fails to provide adequate fuel or is otherwise responsible for the lack or inadequacy of hot water.
  (D) Extermination
    To provide extermination services as necessary. Tenant may be charged for special extermination services required as a consequence of Tenant's failure to keep the leased premises in a clean and sanitary condition or failure to properly prepare the leased premises for scheduled extermination services.
  (E) Maintenance of Structural Elements
    To maintain the structural elements of the building containing the leased premises.
  (F) Maintenance of Common Areas
    To maintain the common areas of the building open to the household.
  (G) Appliances
    To provide a stove and the following additional appliances if any, in safe condition and working order at initial occupancy: _____  _____  _____  _____
    (Specify any additional appliances to be provided by LHA)
  (H) Locks
    To provide new door locks or rekeyed door lock cylinders at the beginning of the tenancy, and thereafter to rekey door lock cylinders within a reasonable time of Tenant's request and at Tenant's expense. To rekey locks promptly upon request of a household member who has obtained a restraining order which is in force against another household member on account of domestic violence and to waive charges for the cost where circumstances warrant.

(I) <u>Notice of Tenant's Right to Grieve</u>
   To notify Tenant in writing of the specific grounds for any proposed adverse action against Tenant by LHA and to notify Tenant of Tenant's right to request a grievance hearing and the process to be used in circumstances where the Tenant has a right to such a hearing if requested.

(J) <u>Emergency Repairs</u>
   To use best efforts to make emergency repairs or otherwise correct conditions which are imminently hazardous to the life, health or safety of Tenant or other household members within a reasonable time after receiving notice and to take other measures specified in Section VII regarding hazardous conditions.

(K) <u>Non-emergency Repairs</u>
   To use best efforts to complete all reasonably required non-emergency repairs of the leased premises within a reasonable time after receiving notice.

(L) <u>Confidentiality of Records</u>
   To preserve the confidentiality of records of Tenant and other household members in accordance with and to the extent provided by 760 CMR 8.00 and other applicable law.

(M) <u>Respect of Tenant's Right to Join a Tenant Organization</u>
   To respect Tenant's right to organize and/or join a tenant association and/or a tenant organization.

(N) <u>Copies of Rules</u>
   Notify Tenant of changes in pertinent rules, policies and regulations affecting the Tenant's tenancy and provide, after a request by Tenant, copies of any such rules, policies and regulations, provided that there may be a charge for such copies if the Tenant has previously been provided with the material.

(O) <u>Prompt Redetermination of Rent</u>
   To redetermine rents promptly at the time of annual redetermination and at the time of any interim redetermination as provided in Section IV and to take appropriate steps to obtain verification of increases or decreases in income promptly.

(P) <u>Prompt Processing of Applications for Transfer</u>
   To process applications for transfer promptly.

(Q) <u>Prompt Processing of Applications to Add a Household Member</u>
   To process applications which seek to add a household member promptly and to determine the qualification of each such proposed household member pursuant to 760 CMR 5.00 promptly.

(R) <u>Eviction Proceedings Against Others</u>
   To commence eviction proceedings against another tenant if LHA determines that such proceedings are warranted under the circumstances and likely to succeed against other such tenant on account of behavior by such tenant, other household member or guest which has jeopardized the health or safety of Tenant or other household member named in this lease.

(S) <u>Assistance to Victims of Domestic Violence</u>
   To provide assistance which the LHA may determine to be reasonable and appropriate to a household member who is a victim of domestic violence.

Section IX. **TENANT'S OBLIGATIONS**
   Tenant has the following obligations which are material conditions of Tenant's tenancy:

(A) <u>Payment of Rent</u>
   To pay rent as provided in Sections II and IV.

(B) <u>Payment for Utilities</u>
   To pay the cost of any utilities specified in Section III and to provide sufficient fuel for heat and hot water if provision of fuel is Tenant's responsibility pursuant to Section III.

(C) <u>Transfer</u>
   To transfer to a unit of appropriate unit size because of decreases in household size as provided in Section VI (A) or because of modernization work as provided in Section VI (C).

(D) <u>Proper Conduct on Housing Authority Property</u>
   To conduct himself/herself, (and to cause each other household member and any guest of Tenant or of another household member to conduct themselves) in a peaceful manner and in a manner which will not injure, endanger, harass or disturb other residents, LHA employees, or other persons lawfully on the LHA's property.

(E) <u>No Threats, Harassment or Nuisance</u>

To refrain from (and to cause each household member and guest to refrain from) unlawful threats or harassment directed against LHA's officers or employees, other residents and others lawfully on the leased premises or on LHA property. To create or maintain no nuisance (and to cause each household member and guest to create or maintain no nuisance) in the leased premises or on LHA property.

(F) <u>No Crimes On or Near the Leased Premises</u>

To refrain from (and to cause each household member to refrain from) any and all criminal conduct in the leased premises, on LHA property or in its vicinity (1) which interferes with or threatens to interfere with the rights of other persons to live quietly, securely and peaceably, (2) which adversely affects or threatens to adversely affect the health, safety, or quality of life of other persons, including LHA officers and employees, residents and others lawfully on the property or in its vicinity, or (3) which adversely affects or threatens to adversely affect the security of property owned by others, including the LHA, its officers and employees, residents and others lawfully on the property or in its vicinity. Such criminal conduct shall also include but not be limited to the criminal conduct specified in Sections X (E) (2) and (3) of this lease.

(G) <u>No Serious Crimes Outside Housing Authority Property</u>

In addition to the foregoing obligation to refrain from criminal activity in the leased premises and on LHA property and its vicinity, to refrain from and to cause each household member to refrain from commission of any serious criminal act which involves: (1) violence against any other person, even if not on LHA property or in its vicinity, (such a crime includes but is not limited to murder, attempted murder, assault and battery with a dangerous weapon, robbery, rape, and indecent assault); (2) sexual misconduct with a child; or (3) the sale or distribution of a controlled substance.

(H) <u>No Disturbances or Loud Noise</u>

To refrain from (and to cause each household member and guest to refrain from) making or creating loud noise or noises, which unreasonably disturb or are likely to unreasonably disturb neighbors, including the LHA's employees. As part of this obligation, Tenant shall refrain (and shall cause each household member and guest to refrain) from playing televisions, radios, CD players, tape players, musical instruments, and the like at a high volume which unreasonably disturbs or is likely to unreasonably disturb neighbors. Tenant shall refrain from and shall cause household members and guests to refrain from holding parties or group gatherings in the leased premises which unreasonably disturb or are likely to unreasonably disturb neighbors. Tenant shall refrain from and shall cause household members and guests to refrain from making loud noise in common areas, roadways, parking areas or elsewhere on or in the vicinity of LHA's property which unreasonably disturbs or is likely to unreasonably disturb neighbors, including but not limited to: (1) unnecessarily noisy operation of any motor vehicle including the operation of any motor vehicle without a working muffler, (2) unreasonably loud indoor or out-of-door parties or gatherings, (3) unreasonably loud or raucous individual behavior, and (4) other activities or behavior which create disturbance or unreasonably loud noise. Tenant shall immediately take effective measures to bring his or her own behavior and the behavior of household members and guests into compliance with this subsection upon request of an officer or employee of LHA or any other person.

(I) <u>Maintaining Clean and Sanitary Condition of Leased premises</u>

To keep (and to cause each household member and guest to keep) the leased premises in a clean and sanitary condition and promptly to remedy any lack of cleanliness or lack of sanitary condition. Tenant shall not create any condition which is likely to attract rodents or insects, to cause offensive odors, or to endanger the health of any person. Tenant and household members shall comply with all applicable obligations imposed upon them by the State Sanitary Code.

(J) <u>Disposal of Garbage and Trash</u>

To dispose (and to cause each household member and guest to dispose) of all garbage, trash and refuse properly in accordance with rules established by LHA and in compliance with state and local law. Prior to disposal Tenant shall keep garbage, trash and refuse in secure bags or containers in a manner which will not attract rodents or insects or cause offensive odors.

(K) <u>Maintaining Safe Condition of Leased Premises</u>

To keep (and cause each household member and guest to keep) the leased premises in safe condition. There shall be no storage of flammable liquids or hazardous substances in the leased premises or elsewhere on LHA's property, unless such liquids or substances are normal household items and are properly stored. No hazardous waste of any sort shall be stored in the leased premises, and all hazardous waste, including used motor oil, shall be properly disposed of by the Tenant.

**(L) Use and Care of Plumbing and Other Utility Services**

To use (and to cause each household member and guest to use) the plumbing fixtures and plumbing and all other utility services properly and solely for their intended uses; not to dispose (and to cause each household member and guest not to dispose) of any oil, hazardous wastes, garbage (excepting garbage processed through a garbage disposal), or trash through the drains or the toilet. Tenant, household members and guests shall not tamper with or attempt repairs to the wiring, gas lines or plumbing and shall not overload electrical circuits or extension cords. All lamps and electrical appliances belonging to Tenant or a household member shall be properly wired. In the event electrical, gas or plumbing repairs to the leased premises shall be necessary, Tenant shall not attempt such repairs but shall immediately notify LHA about the need for repairs. Tenant, household members, and guests shall use any elevator and any common appliance properly.

**(M) Damage**

To refrain from damaging (and to cause each household member and guest to refrain from damaging) the leased premises or any other property of LHA. In the event damage occurs Tenant shall promptly notify LHA about the damage and the cause of the damage.

**(N) Payment for Damage**

To pay the cost of labor and materials reasonably necessary to repair or replace property of LHA lost, removed, damaged or destroyed by the negligence or the intentional act of Tenant, other household member or guest; to pay all costs resulting from misuse of the plumbing or other utility service or from misuse of an elevator or a common appliance; and to make such payment within thirty (30) days following Tenant's receipt of an itemized bill from LHA, which may post a list of reasonable standard charges for repair of damage.

**(O) Pets Policy**

Not to keep any pets or other animals and not to permit pets or other animals to be kept in the leased premises or elsewhere on LHA property on a temporary or permanent basis, excepting reasonably quiet birds in cages or fish in tanks, without the written permission of LHA in accordance with its rules or policies.

**(P) Major Appliances and Heavy Items**

Not to install or operate any major appliances (such as washers, dryers, air conditioners or freezers) or any heavy items (such as waterbeds) without the prior written approval of LHA in accordance with any applicable rules or policies.

**(Q) Rules, Policies and Regulations**

To comply with the rules and policies (and to cause each household member and each guest to comply with the rules and policies) established by LHA for the housing development of which the leased premises are a part pursuant to Section XX; and to comply with applicable regulations of the Department.

**(R) Alterations to the Leased Premises**

To make (and to cause each household member or guest to make) no alterations or additions to the interior of the leased premises or to the exterior of the building containing the leased premises or to the grounds without the prior written approval of LHA. An approved alteration or addition which cannot be removed without damage to the leased premises, building or grounds shall not be removed and shall become the property of LHA at the time when Tenant vacates, unless Tenant shall first have deposited with LHA sufficient funds to pay for any damage resulting from removal and shall have received the written consent of LHA to the removal.

**(S) Guests**

To oversee and supervise the conduct of all guests of Tenant and other household members and to permit overnight guests only in accordance with and subject to the provisions of Section V(B).

**(T) Use and Occupancy of the Leased Premises**

To use and occupy the leased premises only in accordance with the provisions set out in Section V.

**(U) Vacating the Leased Premises**

To vacate promptly upon termination of the lease and to leave the leased premises clean, free of garbage and trash and in as good a condition as existed at the time of commencement of the lease or at the time of a subsequent modernization, normal wear and tear, excluded.

**(V) Smoke Detectors**

To keep all smoke detectors in the leased premises unobstructed at all times; not to tamper with or render inoperable any smoke detector, heat detector, sprinkler, or any part of a fire detection or fire prevention system (including the removal of the battery from a battery-operated smoke detector) on LHA's property; and to notify LHA immediately of the malfunction

or inoperability of any smoke detector in the leased premises; to replace uncharged batteries in any battery-operated smoke detector as necessary to maintain its operation or to notify LHA immediately of the need for such replacement.

### (W) Access to the Leased premises
To permit access to the leased premises by LHA as provided in Section XV and not to replace, add or rekey any locks.

### (X) Payment of Constable Costs and Court Filing Fees
To pay the expenses incurred by LHA as a result of Tenant's breach of any term of this lease, including filing fees, constable costs, reasonable attorney fees, and moving and storage costs in eviction actions commenced on account of any such breach.

### (Y) Wage, Tax and Bank Match; Social Security Numbers
To participate and cause household members to participate in any wage, tax, and/or bank match system required by the Department and permissible under law and to provide upon request the information and authorizations necessary for such a wage, tax, and/or bank match. Subject to any applicable law, to provide and to cause each other adult household member to provide LHA with his or her social security number, and to authorize use of such social security number for use by LHA for verification of income and assets of the household through the Massachusetts Department of Revenue's integrated tax, wage reporting, and bank match systems or similar means of verification.

## Section X. TERMINATION OR VOIDING OF LEASE

### (A) Termination by Tenant
This lease may be terminated by Tenant at any time by giving thirty (30) days advance written notice to LHA.

### (B) Voiding by LHA
This lease and occupancy of the leased premises by Tenant and Tenant's household members may be annulled and made void by LHA for any of the reasons set out in M.G.L. c. 139 §19. In the event that grounds shall exist for so voiding the lease and in the event LHA shall determine to use the procedure set out in M.G.L. c. 139 §19, LHA shall give to Tenant a written notice of voiding lease, which shall state the reason for voiding the lease, prior to LHA's seeking an injunction or execution for possession in court. There shall be no grievance hearing prior to the court proceeding.

### (C) Termination by LHA
This lease and occupancy of the leased premises by Tenant and Tenant's household members may be terminated by LHA for any of the following reasons:
(1) Tenant's failure to make timely payment of rent in violation of Sections II (A) and IV.
(2) Breach or violation by Tenant, a household member, or guest of any of the occupancy obligations and restrictions set out in Sections I and V.
(3) Criminal conduct, threats, harassment, or nuisance by Tenant, a household member, on LHA's property, including the leased premises, or in its vicinity, in violation of Section IX (E) and (F). This criminal conduct includes but is not limited to the criminal conduct described in Section X (E)(2) and (3).
(4) Commission of a serious crime involving violence against another person by Tenant or by a household member, even if not on LHA property or its vicinity, at any time while the lease is in effect, in violation of Section IX(G).
(5) The conduct of a guest, including a guest of a household member, if the conduct of the guest in the leased premises or on LHA property violates the provisions of this lease and the conduct would be grounds for termination of the lease if committed by Tenant and if the Tenant knew beforehand or should have known beforehand that the guest would engage in misconduct or if Tenant failed to take reasonable steps to supervise the guest.
(6) In the event that Tenant has knowledge of a court order barring a person from the leased premises or from LHA property, or in the event a household member has been deleted from the lease by Tenant at the request of LHA, the Tenant's failure to take all necessary steps to exclude the person from the leased premises.
(7) Income which exceeds the maximum allowable for a household under applicable regulations or authorization, provided that LHA may provide an exemption for up to six (6) months if Tenant can establish hardship which prevents an earlier relocation of the household to unsubsidized housing.
(8) Failure by the Tenant or a household member to supply complete and accurate information necessary for a rent determination or for a determination of eligibility for continued occupancy. Failure by Tenant or a household member to give requisite authorization for verification of eligibility, income, employment and household composition. Failure to provide a social security number as required in Section IX (Y), or to participate in a wage, tax or bank match as required in Section IX (Y).

(9) Failure to supply complete and accurate information in Tenant's application for public housing or in a request for a priority or preference status or in the documentation submitted in support of Tenant's application for public housing, or request for a priority or preference status, if complete and accurate information would have provided: (a) cause for finding Tenant ineligible or unqualified for public housing; (b) cause for determining Tenant not entitled to the priority or preference status which Tenant received; (c) cause for housing Tenant in a smaller unit; or (d) cause for establishing a materially higher rent.

(10) Failure to sign a lease, lease amendment or lease addendum containing lease provisions authorized by the Department or required by applicable regulations or by applicable law; failure to sign lease provisions required by changes in size or income of Tenant's household.

(11) Failure to vacate in the event of a decrease in household size, as provided in Section VI (A), or in the event of modernization work, as provided in Section VI (C).

(12) Failure by Tenant or by a household member to physically occupy the leased premises as his or her primary residence for at least nine (9) months in any twelve (12) month period except as provided in Section V (A).

(13) A guest's staying overnight for more than a total of twenty-one (21) nights in a twelve (12) month period without LHA's written approval.

(14) Repeated failure by Tenant to report the length of the stay of an overnight guest within a reasonable time following the stay.

(15) Breach or violation by Tenant or a household member of any one of the other obligations set out in Section IX of this lease.

(16) Other good cause.

(D) **LHA's Notice of Termination of Lease**

Prior to terminating this lease and the underlying occupancy of Tenant and Tenant's household members, LHA shall give to Tenant a written notice of termination of lease which precedes the date of termination by:

(1) at least fourteen (14) days in the case of failure to pay rent;
(2) a reasonable time considering the seriousness of the grounds for termination (but not to exceed fourteen (14) days) when the grounds (other than nonpayment of rent) are such that no grievance hearing is required; or
(3) no less than thirty (30) days in any other case.

The notice of termination of lease shall state the reason for termination of the lease. It may include a notice to quit. If Tenant is entitled to a grievance hearing under subsection (E) of this section, the notice of termination of lease shall specify that, within seven (7) days following the date on which notice is given, Tenant has the right to request such a hearing and shall specify the process to be used in making the request.

(E) **Administrative Hearing Prior to Lease Termination In Certain Instances**

If LHA shall give notice of termination of lease to Tenant, within seven (7) days after the notice has been given, the Tenant may request a grievance hearing regarding whether good cause exists for terminating the lease, except that pursuant to M.G.L. c.121B, §32 no grievance hearing shall be required:

(1) in the event of nonpayment of rent
(2) in the event LHA has reason to believe that Tenant or a household member:

(a) has unlawfully caused serious physical harm to another tenant or an employee of LHA or any other person lawfully on LHA's property.

(b) has unlawfully threatened to seriously physically harm another tenant or an employee of LHA or any person lawfully on LHA's property.

(c) has unlawfully destroyed, vandalized or stolen property of a tenant or of LHA or of any person lawfully on LHA's property, if such conduct creates or maintains a serious threat to the health or safety of a tenant, an LHA employee, or any other person lawfully on LHA's property.

(d) has unlawfully possessed, carried, or kept a weapon on or adjacent to LHA's property in violation of M.G.L. c. 269, §10.

(e) has unlawfully possessed or used an explosive or incendiary device on or adjacent to LHA's property or otherwise violated M.G.L. c. 266, §§ 101, 102, 102A or 102B.

(f) has unlawfully possessed, sold, or possessed with intent to distribute a class A, B or C controlled substance, as defined in M.G.L. c. 94C, §31, on or adjacent to LHA's property.

(g) has engaged in other criminal conduct which seriously threatened or endangered the health or safety of any member of a tenant household, employee of LHA, or any person lawfully on LHA's property.

(h) has engaged in behavior which would be cause for voiding this lease pursuant to the provisions of M.G.L. c. 139, §19.

(3) in the event LHA has reason to believe that a guest of Tenant or a guest of another household member has engaged in any of the behavior listed in paragraph (2) and that Tenant knew beforehand or should have known beforehand that there was a reasonable possibility that the guest would engage in misconduct.

### (F) Procedure at a Grievance Hearing on Lease Termination

A written request for a grievance hearing shall be made by Tenant to the LHA within seven (7) days after notice of termination of lease has been given to Tenant. The grievance hearing shall be held pursuant to LHA's grievance procedure.

LHA shall schedule a grievance hearing within thirty (30) days from receipt of the request for a hearing and at least fifteen (15) days prior to the date of termination set out in the notice of termination. Reasonable notice shall be given to Tenant.

In cases where Tenant has properly requested a grievance hearing, LHA shall not institute an action for summary process pending the hearing and a decision in LHA's favor or other disposition without a decision on the merits.

At the grievance hearing any additional reason for termination of the lease, which arose subsequent to the date of the notice of termination of lease, shall be considered so long as LHA gives Tenant written notice of the additional reason, not less than three (3) days before the hearing or, if a reason for eviction shall have arisen within such three (3) day period, a subsequent session of the hearing may be scheduled on not less than three (3) days notice to consider such additional reason.

### (G) Summary Process Court Actions

If a grievance hearing is not required or is not requested, after the expiration of the deadline in the notice of termination of lease or notice to quit, if Tenant and Tenant's household members have failed to vacate, LHA may institute an action for summary process or other appropriate judicial action. If the decision following a grievance hearing is in LHA's favor or if there is a disposition without a decision on the merits and the deadline in the notice of termination of lease or notice to quit has expired but Tenant or any of Tenant's household members has failed to vacate, LHA may institute an action for summary process or other appropriate judicial action.

### Section XI. DELETION OF A HOUSEHOLD MEMBER FROM THE LEASE

Tenant may delete a household member named in Section I of this lease or in a lease addendum by a written lease addendum signed by Tenant and LHA. In the event that the conduct of a household member is such as to constitute cause for termination of the lease under Section X, but LHA in its sole discretion determines that eviction of Tenant is not required so long as the misbehaving household member ceases occupancy in the leased premises, LHA may request that Tenant delete the household member as a person authorized to live in the leased premises. A request by LHA for deletion shall specify the reason why deletion is requested. Notwithstanding a request to delete a household member, LHA may issue a notice of termination of lease on account of the same conduct of the household member about which a request for deletion is made. In the event a household member has been deleted at the request of LHA, Tenant shall not permit such person to be a guest thereafter.

### Section XII. ADDITION OF A HOUSEHOLD MEMBER TO LEASE

#### LHA Approval of an Additional Member Required Prior to Occupancy

Before any person not named in this lease may be added as a household member, Tenant and the person involved shall have applied in writing to LHA for approval of a household including such person and LHA shall have approved the application. The enlarged household shall meet all applicable eligibility requirements for a household initially applying for housing except income shall be within the limit for continued occupancy. Before approving a household including an additional person age ten (10) or older as a member LHA shall screen him or her as an applicant for public housing and shall determine him or her to be qualified. Upon such approval, Tenant and LHA shall sign a new lease or a written lease addendum naming the person as an additional household member. Unless and until a new lease or a written lease addendum has been signed, the person applying to be added as a household member, shall not occupy the leased premises except under the restrictions applicable to guests. In the event of the birth of a child to Tenant or a household member, LHA shall approve an enlarged household including any such child. Except as may be permitted by applicable state regulations or by other applicable law or authorization, the leased premises shall be of appropriate unit size for the

household including the additional person. In no event shall Tenant's household exceed the maximum number of occupants permissible for the leased premises under the provisions of the State Sanitary Code.

## Section XIII. REASONABLE ACCOMMODATION OR MODIFICATION ON ACCOUNT OF A DISABILITY

The LHA is obligated to make reasonable accommodations and reasonable modifications for persons with disabilities. If Tenant or a household member has a disability and, on account of this disability, in order to have equal opportunity to use and enjoy the leased premises or the public or common use areas or to participate fully in the LHA's programs, activities, or services, needs a reasonable accommodation in LHA's rules, policies, practices or services, or needs a reasonable modification of the leased premises or public or common use areas, the Tenant or household member, or person acting on behalf of the Tenant or household member, may request a reasonable accommodation or a reasonable modification. Within a reasonable time following verification, as needed, of the existence of a disability and the disability-related need for an accommodation or modification, the LHA shall provide an accommodation or modification that is reasonable under the circumstances, including the availability of funds.

## Section XIV. INSPECTIONS
### (A) Pre-occupancy Inspection
Prior to occupancy LHA and Tenant (or Tenant's designated representative) shall inspect the leased premises; following the inspection LHA shall provide Tenant with a written statement of condition describing the condition of the leased premises and any appliances in it. The statement of condition shall be signed by both LHA and Tenant (or Tenant's designated representative) prior to occupancy.

### (B) Periodic Inspections
LHA may conduct periodic inspections of the leased premises. Tenant shall receive advance notice as provided in Section XV and shall receive a written copy of the results of each such inspection.

### (C) Termination Inspection
Upon termination of occupancy, LHA and Tenant (unless Tenant vacates without notice or refuses to participate or to designate a representative) shall inspect the leased premises and LHA shall provide Tenant with a written statement of condition which shall list any damage or destruction, apart from reasonable wear and tear. LHA shall at such time or thereafter submit a bill to Tenant for the reasonable charges for repairs and replacements required to put the leased premises in as good condition as the condition reflected by the original statement of condition (as it may have been modified as a result of modernization), reasonable wear and tear during occupancy by Tenant excepted. Following receipt of the bill, Tenant shall forthwith pay such charges.

## Section XV. ACCESS TO THE LEASED PREMISES BY LHA
### (A) Access for Non-Emergency Repairs, Maintenance or an Inspection
LHA may enter the leased premises at reasonable times to perform non-emergency repairs, maintenance or modernization work or to conduct an inspection, and in the absence of an agreed time shall give Tenant at least forty-eight (48) hours advance notice of the time and purpose of entry.

### (B) Access for Requested Repairs or Maintenance
In the event of repairs and maintenance in response to a request by Tenant, in the absence of an agreed time, LHA shall give Tenant reasonable notice prior to entry, given, whenever possible, at least on the day prior to entry.

### (C) Access for an Emergency
If LHA has reasonable cause to believe that an emergency exists endangering life or property which requires immediate action, LHA shall give Tenant whatever reasonable notice which the circumstances may permit before accessing the leased premises to deal with the emergency.

### (D) Access Where No Adult Present
If at any time LHA shall have entered the leased premises and if no adult household member shall have been present, LHA shall leave a written notice specifying the time and reason for access and any work performed or measures taken.

## Section XVI. PERSONAL PROPERTY
### (A) Insurance of Personal Property By Tenant
Tenant shall be responsible for insuring personal property belonging to Tenant, other household members and guests against theft or other casualty.

(B) Removal of Personal Property

Upon termination of this lease and the departure of Tenant, Tenant shall immediately remove all personal property belonging to Tenant and to other household members or guests from the leased premises and from LHA property.

(C) **Personal Property Left on Termination of Lease**

Any personal property belonging to Tenant, other household members or guests, which is not removed from the leased premises and from LHA's property following the termination of the lease and departure of Tenant, shall be treated as abandoned and may be disposed of by LHA. Tenant shall be responsible for and shall reimburse LHA for costs for moving, storage and disposal of personal property following termination of this lease.

Section XVII. **NOTICES**

(A) **Notices to Tenant**

A notice of termination of lease, notice to quit, notice of voiding lease or notice of apparent abandonment shall be given to Tenant as follows:

(1) in writing; and
(2) (a) given to Tenant in hand; or
   (b) sent by certified mail, return receipt requested, to the Tenant at the address of the leased premises or such other mailing address provided by Tenant to LHA; or
   (c) given to any person answering the door to the leased premises with a copy mailed to Tenant by regular first class mail; or
   (d) placed under or through the door to the leased premises with a copy mailed to Tenant by regular first class mail in the event no person answers at the door to the leased premises; or
   (e) by service by a constable or a deputy sheriff in the manner provided for service of civil process.

Other notices to Tenant shall be sufficient if in writing and sent by regular first class mail or hand delivered to the leased premises.

(B) **Notices to LHA**

Any notice to LHA shall be sufficient if:

(1) in writing; and
(2) (a) sent by certified mail, return receipt requested to LHA at its office; or
   (b) hand delivered to LHA's office during regular business hours.

Section XVIII. **COMPLIANCE WITH REGULATIONS OF THE DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**

The Department of Housing and Community Development has promulgated and may promulgate regulations regarding the terms and conditions of public housing. Insofar as applicable LHA and Tenant shall comply with the Department's regulations and any authorizations or waivers issued pursuant thereto. LHA shall post and keep posted in a conspicuous place in its central office and, if practical, in each development a copy of the applicable regulations although absence of posting shall not affect their enforceability.

Section XIX. **COMPLIANCE WITH LHA'S RULES AND POLICIES**

LHA has adopted or may adopt reasonable rules and policies for the benefit and well being of the housing development, of which the leased premises are a part, and for the benefit of the tenants of the housing development. Compliance with LHA's rules and policies, is a material condition of tenancy. Tenant, other household members and guests shall comply with such rules and policies. Substantial violation of any rule or policy shall be cause for termination of this lease and eviction. LHA shall post and keep posted in a conspicuous place in its central office and, if practical in each development a copy of all rules and policies which affect the rights, status, duties or welfare of Tenant and other household members, although absence of posting shall not affect their enforceability. Upon request Tenant shall without charge, be provided one copy of applicable rules, policies or regulations. LHA may charge for additional copies.

Section XX. **CHANGES**

This lease represents the entire agreement between LHA and Tenant. No changes, additions or deletions from this lease shall be made except by a written amendment or addendum signed by LHA and Tenant, provided that changes,

additions or deletions required by state or federal law, including state or federal regulations, shall be effective following at least thirty (30) days advance written notice to Tenant of the changes, additions or deletions.

## Section XXI. ADDITIONAL PROVISIONS

This lease is executed in two counterparts, one of which shall be retained by LHA and one of which shall be retained by Tenant. The headings are for convenience of reference and do not constitute part of the lease. Additional provisions (if any) shall be set out in amendment(s) or addenda which shall specifically make reference to this lease.

Executed on this ____29th____ day of __August 2013__

Tenant Signature: _____

_____Jorge Maisonet_____
(Print Name(s))

LHA Signature: _____Lorri DeFrancesco_____
Lorri DeFrancesco, Public Housing Administrator

Revised Lease 03/01/2010

From: Martin J. Rooney [mailto:mjr@curleylaw.com]
Sent: Tuesday, July 15, 2014 10:57 AM
To: Bradley Singer <bas@bsingerlaw.com>
Subject: RE: RE: Maisonet v. SHA, et al.

Brad,

I understood from your last e-mail this was only available until close of business yesterday. Glad to see that Plaintiff is willing to be more cooperative, even if he is not concerned with burning up in a fire. Yes, please sign my name. My BBO# is 426910.

Martin


EXHIBIT 10

1



**SALEM HOUSING AUTHORITY**

Date: November 14, 2014

To: Tenants of the Dalton Building

From: Debra A. Tucker, Assistant Executive Director

Re: **End of Treatment Inspection**

Thank you for your cooperation throughout this trying time treating the Dalton Building for bedbugs.

A1 Exterminators will be visiting every unit in your building on **Tuesday, November 17, 2014 between 8:00 a.m. and 4:00 p.m.** They will be inspecting all mattresses and box springs for two reasons.

First A-1 Exterminators will be making a visual inspection of them to ensure that there are no bedbugs present. Secondly, they will be measuring the mattresses and box springs for encasement.

A1 Exterminators will then order the correct sizes and return at a later date to provide them to all tenants. You will be notified of the return date, once we receive it.

A maintenance department employee will accompany A1 Exterminators on this inspection. Although we prefer that you be at home for this inspection, it is not necessary. If you are not at home, the maintenance department will provide access to your unit.

Thank you in advance.

Copy: Lorri DeFrancesco

file: dt bedbug Dalton inspection



27 CHARTER STREET · SALEM MA 01970-3699
978.744.4431 · FAX 978.744.9614 · EMAIL info@salemha.org
Equal Opportunity Employer



EXHIBIT 11

**From:** Alex Hahn <alex@hahnlawgroup.com>
**Date:** Fri, 21 Nov 2014 12:56:15 -0500
**To:** <mjr@curleylaw.com>
**Subject:** FW: Maisonet v. Salem HA

Martin,

I have had an opportunity to review more of the documents from the Maisonet matter and will look forward to speaking with you soon concerning the mediation and our respective clients' positions.

In the meantime, having reviewed the Court's Order of July 21st, 2014, I am perplexed concerning the documents that I forward to you earlier this week (re-attached for your convenience). I have difficulty seeing the October 21st notice to Mr. Maisonet and the attachment as anything other than a violation of the Court's Order, which enjoins the defendants from "evicting, attempting to evict, or threatening to evict the Plaintiff pending the resolution of this civil action."

As I have advised you, I am only representing Mr. Maisonet for purposes of the mediation, as opposed to any contempt or other proceedings in the meantime. However, I will certainly bring to the mediating judge's attention any violations of existing orders. Needless to say, if Mr. Maisonet's tenancy were terminated on November 30, as the notice indicates, I believe this would be a matter of grave concern to the judge, as would any other actions that violate the July 21st order.

If you have any information about the status of these notices, please let me know, as this will certainly be relevant to my efforts to formulate a position for the mediation.

C. Alex Hahn, Esq.
42 Newbern Street, Ste. 3
Boston, MA 02130
Phone: 617-477-4097
Mobile: 617-756-7941


**From:** Alex Hahn <alex@hahnlawgroup.com>
**Date:** Mon, 17 Nov 2014 10:55:08 -0500
**To:** "Martin J. Rooney" <mjr@curleylaw.com>
**Subject:** FW: Maisonet v. Salem HA, et al\ Bed bugs

Martin — FYI see attached.

C. Alex Hahn, Esq.
42 Newbern Street, Ste. 3
Boston, MA 02130
Phone: 617-477-4097


EXHIBIT 12

1